Okay. Party's over. Okay. We've got other customers. All right. We come to Miller. Another Miller v. Fleming. Morning. Good morning, Your Honor. My name is Donna Mullen. I'm an assistant attorney general representing the state in this habeas corpus appeal. This court should vacate the decision of the district court granting the writ and determine that the state court did not err in admitting the child hearsay statements to the testimony of the police officer, the nurse, and the physician. The major argument that the State has is that the Washington – that the district court erred in applying de novo review. Under this Court's decisions in case law, when a State court has not addressed – the appellate State court has not addressed an issue of constitutional claim, the court has looked to the trial court's determination as the last reasoned decision. That in Hirschfeld v. Payne in 2005, the Ninth Circuit looked at a Feretta motion. And although the Washington Court of Appeals had dealt with the first Feretta motion, they had not dealt with the second Feretta motion. And the Court determined they could look to the judge's oral decision in addressing that question. The Hirschfeld v. Payne was – What ruling of the trial judge do you want us to give deference to? Or do you think that the district court should have given deference? They should have given deference to the trial court's evidentiary hearing on the issue of the omission of child hearsay statements. And part of that was overruled by the Court of Appeals, wasn't it? Well, no. I would disagree with that, Your Honor. The Court of Appeals determined that there were two requirements, competency and reliability of the statements, in order for the statements to be admitted. That was based on a case called State v. CJ. That particular case was later overturned by the Washington Supreme Court, who determined that competency is not a factor to be considered when looking at the omission of child hearsay statements. And competency is not a Federal requirement either. So that what happened with the Washington Court of Appeals is they never reached the issue of the reliability of the child hearsay statements in terms of the police officer, Officer Kakuta's, testimony. If this Court applies the correct AGPAS standard of review, the trial court's decision was not contrary to or an unreasonable application of clearly established Federal law. And this Court should deny the habeas corpus petition. Let me be just precise. Which do you see us reviewing? What court? The state trial court or the state appeals court? I'm saying the last reason decision was the trial court's oral decision in the evidentiary hearing with regards to the reliability of the statements for admission under the child hearsay statements. Now, omission of the child hearsay statements. Now, one of the issues is did the court apply the correct law? And the state court, or the trial court in this case, applied the factors from State v. Ryan, which has been positively approved in Ohio v. Wright and also in Swan v. Peterson. So it was clear then that the trial court at the evidentiary hearing applied the correct Supreme Court law that was consistent with the U.S. Supreme Court cases. Then the issue is, if that's the case, was their decision an unreasonable application? And the court, in making a judgment about whether it was an unreasonable application, has to look at more than just whether you think that the trial court made an error. It has to be objectively unreasonable. And it wasn't unreasonable because the trial court looked at the totality of the circumstances. The statements to the officer, the police officer, were very clear. This was a pre-ADEPA case, right? No, Your Honor. It's a case after, under the ADEPA. Well, it's pre if they didn't rule on the federal issue. I'm sorry, Your Honor. We treat it as a pre-ADEPA if they didn't rule on the federal issue. Well, your case law says that you look to the last reasoned decision of the State court, which in this case was the trial court's decision in the evidentiary hearing. Did the trial court rule on the federal constitutional issue? The trial court was looking at it from a State court. Did they rule on the federal constitutional issue? They applied the same law that is consistent with federal law. And in Early v. Packer, the U.S. Supreme Court has said that the State court doesn't have to cite federal constitutional law. It doesn't even have to know that there's a case out there. They applied law that was consistent with Wright v. Idaho and the United States Supreme Court law. So that the decision of the trial court in admitting the statements made to the police officer and the statements made to the nurse and physician was not contrary to, nor was it an unreasonable application. It was the factors that the trial court considered is that it was very close. The statements to the police officer was very close in time. In fact, it was within an hour of the incident, the first incident, and it was within a half an hour of the second. There was internal consistency between the statements that the victim, Kay, made to the police officer at the same time that her sister was separately talking to another police officer. Those statements were consistent. The statements were consistent as they were made to the police officer and also to the nurse and the physician. And Officer Kakuta did not put any ideas or thoughts in the victim's mind. In fact, the trial court found him to be sensitive to the issues of the child that he had spent 15 to 20 minutes developing a rapport with the child. And although she was initially scared, as I think any child would be, she developed a good relationship with him, answered questions directly, and he was surprised, he testified, that how directly she responded to his questions. She never referred to a third person. She never referred to my sister told her that. So neither her sister nor the police officer put or created any thoughts in her mind. The trial court found that neither the setting of the statements to the police officer nor the police officer himself was intimidating enough to have elicited the statements that were made. Let me ask you this. When did the trial take place? How long after the so-called event took place? I'm sorry, Your Honor, I can't answer that question. I know that it must have been at least six months, but I'm sorry, I don't know the answer to that question. As I recall, at the time of trial, Kaye didn't remember anything and couldn't testify. Yes, at the evidentiary hearing, the trial court found her not competent to testify because she had no memories of the event. But whether or not she was competent is not a factor in terms of determining whether the statements are reliable or trustworthy. You have to look at the totality of the circumstances, and that's what the trial judge did. And that was not an unreasonable application. Certainly, if you read the excerpts of the evidentiary hearing, which I've supplied in the supplemental and the excerpts of record, and if you read that complete thing, you'll see that the judge was very careful. And I think the trial judge certainly are the individuals who can judge the credibility and the demeanor of the witnesses. Do you have authority for the fact that if the state court makes a ruling that is not in the name of federal law and doesn't seem to be addressing a federal issue but parallels it, that we can treat that as a ruling on the federal question and subject it to head analysis? Well, I don't have a specific case. In the Hirschfield case, it was a FREDA case. I agree with you. The Supreme Court has said, well, the state court doesn't have to know about the decision of ours that they're being either consistent with or inconsistent with. They don't even have to be aware of it. But that's in the context of somebody at least raising a federal issue, I think. And if the federal issue isn't raised at all or at least isn't addressed at all, I guess it has to be raised to be exhausted, but if it isn't addressed at all by the state courts. Well, I think it is addressed. I mean, the state court's requirements for admission of child hearsay statements are coextensive with the federal law. They're deciding the same issue. If they're not admissible, if they find they're not reliable and trustworthy, that's maybe under the state law, but it's under the federal law too. They're coextensive with each other. In the cases that the Court has applied to the last recent decision, they didn't specifically discuss federal law or a constitutional claim. They discussed the issue they were dealing with. One was a Ferretta motion, and another I think it was a referee's decision with regards to ineffective assistance of counsel. That was done in the federal court. In another one, it was a Ferretta decision. But when you look at the transcripts, which the Ninth Circuit looked at in those cases, none of the transcripts say this is a constitutional issue we're dealing with. Kennedy, which was the Ferretta one that you mentioned? Hirschfeld v. Payne was the Ferretta claim, and also in Stenson v. Lambert, because the Washington Supreme Court did not reach the issue of timeliness, the Ninth Circuit looked to the trial court's decision as the last recent decision on the issue. I'd like to reserve the remainder. I'd like to reserve the remainder, Your Honor. Thank you. Corrie Endo. Good morning, Your Honors. May it please the Court. My name is Corrie Endo. I'm with Nancy Tenney. I'm here on behalf of Leon Miller. What tends to get lost in this appeal is that Mr. Miller was unable to cross-examine Kay at his trial. He could not ask her a single question because she could not about her claim that she couldn't remember what had happened seven months earlier. He couldn't ask her what Jay. If you profit with the law, you win, but it isn't. So tell us, what was the federal constitutional right that was violated? The admission of Kay's statements through the testimony of Officer Kakuda, the nurse and the doctor, also violated the pre-Crawford law of Ohio v. Roberts and Idaho v. Wright. Well, now, as I understand it, federal law is that statements made to a medical person for treatment is a firmly rooted exception to permit the hearsay to be introduced. So what was wrong with admitting the statements to the doctor and the nurse? The Washington courts have defined their evidentiary rule in a broader way to cover evidence. I know that, but what federal right was violated by that testimony being admitted? His Sixth Amendment right of confrontation under Ohio v. Roberts. No, no. That's the general argument. Specifically, this hearsay is admitted, and the federal law is it's a firmly rooted exception to the hearsay objection. Okay. So how is federal law violated? In two ways. First of all, this court should look to the state court's recognition that this aspect of the evidentiary rule does not come within the firmly rooted hearsay. Why should it? We're applying federal law, federal constitutional law. Because? Because he's vindicating a federal right, not a state right. I understand that, Your Honor. But here, under the Washington rules, the Washington courts allow evidence, even though the declarant does not appreciate that they're speaking to a medical person when it's a young child. I know all that. But once you kind of argue what might happen under state law, you have to say, how would that violate the federal constitution when the Supreme Court has said the medical exception is firmly rooted? Then I guess this Court has to make its own independent analysis of whether or not. Well, we have to observe. We can't be independent of the United States Supreme Court. No, Your Honor. And told us that the medical exception is firmly rooted. I agree with that. How are we going to get away from that? I think there are two ways. First of all, this Court can conduct its own independent analysis to see whether the statements actually come within the firmly rooted hearsay exception. And that's what this Court recently did in Windsor, what it did in Webb v. Lewis. And here, because the child had no understanding that she was actually speaking to a medical person for the purposes of treatment or diagnosis as required by United States v. George and this Court's precedent and the Supreme Court's precedent, then it doesn't actually fall within the firmly rooted aspect of this hearsay exception. And the Washington courts themselves have recognized this by saying, okay, we allow this additional evidence in, but if we do, the courts have to find that there's a showing of reliability, because it's not part of the traditional exception that necessarily has trustworthiness aspects to it. Well, she goes to a nurse, she goes to a doctor. Of course, she's reporting a crime, but isn't she also getting treatment? Your Honor, if we look at the facts of this case, when Kay goes and talks with Nurse Martinez, she's there for an hour, Nurse Martinez asks her a series of questions, conducts an examination, and it's only then that she gives this word or makes this statement that's recorded word for word and that's introduced at trial after whatever medical treatment may have been provided, although it's not clear from the record that actually any treatment was provided. Kay herself certainly said she did not need medical treatment. Officer Cahuta did not appear to have believed there was any need for treatment. And if we look at the facts here, it seems clear that this falls outside of the kind of statement that is traditionally allowed under the statements for medical treatment, where the child has no appreciation of why she's there, where the nurse is conducted as following a strict protocol that's clearly for the purposes of obtaining evidence rather than for treating the child. I would think it often happens that both purposes are served. If somebody feels they've been raped or some sexual assault, it's the most obvious thing in the world to launch some medical examination. And nobody's going to examine them medically without finding out the circumstances. I agree, Your Honor. So both the treatment and the report of the alleged crime occur simultaneously. Well, here it did not occur simultaneously. The 7-year-old who was not raped and who did not perceive to have had herself did not perceive to have any injuries went through this examination. And only then did the nurse say, okay, now tell me again what happened. And then she recorded the statement. And so it's not a simultaneous. Well, I'll look at it. But do you think the nurse just went ahead and didn't ask her why they happened to be here? No. I believe that conversation happened earlier. But those statements did not come in. What came in was this word-for-word recording of what Kay told the nurse after the examination was completed. And that does not fall within the firmly rooted hearsay exception. If I can, I'd like to turn to the State's argument that the trial court failed to defer to the Washington Court of Appeals. And the Hirshfield and Stenson cases are clearly distinguishable in that here the Washington Court of Appeals rejected the trial court's analysis. They overturned that decision. And so the State hopes to kind of ---- Was it based on grounds of the competency requirement? That was the basis of the ruling. If CJ had not been decided, I think it's really impossible for us to know what would have happened. And that's what the State's just asking, okay, well, let's revive the trial court's decision because CJ was overturned. But that argument ignores the principles of finality and comedy and final ---- excuse me, finality and federalism and comedy that underlie habeas rules and also is just ask the court to guess about what the Washington Court of Appeals would have done had CJ not been the controlling precedent at the time that the Miller appeal was decided in the trial court. And I don't think that there's any way to know exactly what would have happened had that precedent not been in place. But at the same time, I don't think we can just revive the trial court's decision and say, okay, this is okay, even though the Washington Court of Appeals said, no, it's not. But even if this court does feel that it should defer to the trial court's ruling on the admission of the hearsay statements, that ruling is itself contrary to and an unreasonable determination of the facts in light of the evidence presented, for one thing, the statements are not consistent. The trial court's ---- The statements are not what? Internally consistent. When Kay speaks to Officer Kakuda, she says only that his hands were in her pants and that it hurt. And then as time passes and she talks with the nurse and the doctor, the statement grows extensively to where Mr. Miller's pants were allegedly off, where he's unbuttoning Kay's pants, where she's going out to get ice cream, that his whole hand is inside of her. The statements change over time. And so the trial court's determination that the statements were consistent is an unreasonable determination of the facts in light of the evidence presented. It's also unreasonable ---- excuse me. It was contrary to right in light of what we have here to say that this is sufficient to overcome the great hurdle that the State had in showing that the presumption of unreliability did not apply. They said it was simply the open-ended questions, close in time, and internal consistency. And the right court found that such limited factors were not sufficient. And in terms of the open-ended questions, Officer Kakuda initially asks an open-ended question, follows up with some directed questions. Nurse Martinez, we have no idea what kind of questions she was asking Kay. And Dr. Minton talked first with the mother in Kay's presence and got a statement from the mother about what had occurred. And then turns to Kay and says, now you tell me what happens. And Kay repeats what the mother says. And so even though there was an open-ended question, it certainly was not a spontaneous statement or the kind of circumstances under which this open-ended question would convey any reliability. When I ask you, I just want to be clear. The Washington Court of Appeal, what was their ruling on the officers' testimony They found it was not admissible under either the present sense impression hearsay exception or under the Washington child hearsay. And then do they say it was harmless error? They said it was harmless error using a sufficiency of the evidence standard. They said the evidence was sufficient to support the conviction, so therefore it's harmless. Now, how do we handle that? Suppose we agreed that was Federal error. Well, I believe the harmless error analysis should be de novo because the Washington Court of Appeals did not engage in the requisite constitutional Chapman standard. It's up to us to make the review now. Right. And as the district court has, in Judge Peckman's original 2006 order granting habeas relief, she relied only upon the statement to Officer Kakuda and found that the admission of it violated Mr. Miller's constitutional rights and warranted habeas relief. Because of the emphasis that the state placed upon that statement, because of his prestige as a law enforcement officer, she cited that the state called Officer Kakuda first and really all that he could testify to was what Kay had told him, that her statement to him was the most clear statement in which Kay identified the perpetrator, the alleged perpetrator, as Mr. Miller. And so no matter how the state handled harmless error, we're probably at a standard under Brecht. I'm sorry, Your Honor? I suppose no matter how the state dealt with harmless error, for us it would be a Brecht against Abrahamson. That's true, Your Honor. And that's the standard that Judge Peckman applied below, both with regard to Officer Kakuda's statement alone in the 2006 order, and then again with regard to all three statements, which she found to be constitutional error upon remand from this Court. Let me ask you this question. Was there any evidence in this record that your client had been involved in conduct of this nature in the past? No, Your Honor. And I would also point out that the physical evidence was, as the state prosecutor argued, unhelpful or noted was unhelpful, and that the only other evidence against Mr. Miller was the testimony of Kay's older sister, Jay, whose statement changed significantly over time. She first indicated that she wasn't sure whether he had his hands over or under her bed, whether Kay was awake or asleep, whether she took her in or outside of the house or left her on the couch. She admitted that she had spoken to, I think, about ten people prior to her trial testimony. And without the statements that Kay made to the officer, the nurse, and the doctor, the only other evidence is the unhelpful forensic evidence. Well, were any of his statements admitted? Yes, Your Honor. That might have had some weight. And his statements were unclear as to how they, you know, he denied touching her. He said that she was playing on top of him, which was consistent with her mother's In his statement, I would think would be harmful as far as the jury is concerned because it said, you know, she came on to me as an aggressively sexual man. Do you see this guy defending himself from a 7-year-old? Your Honor, I think we have to consider both that that was somewhat consistent with Kay's mother's own testimony about how she was playful and liked to tickle him. And whether Mr. Miller perceived that as a sexually aggressive behavior or misperceived that as sexually aggressive, I think is entirely distinct from whether or not his conviction. In light of the minimal evidence against him and his inability to cross it. He's finished. He completed his sentence, didn't he? He did. He was served, I believe, four months of three years of his community custody part of his sentence. He fulfilled his term of imprisonment. He has been out since 2006. Where is he now? He's living in Nevada. And he's been in touch with our office regularly. Has he had to register as a sexual offender? Last we checked, he had registered even though the conviction had been vacated. But there had been confusion. And he just wanted to make sure that his bases were covered and that he was. What do you mean the conviction had been vacated? Because by Judge Peckman's order. Oh, I see. Granting the writ. But because he wasn't certain that every law enforcement officer in the country would be aware of that decision, he decided it would be in his best interest to just go ahead and register and to be on the safe side. Have you been with this case for a long time? We were appointed after the district court first issued its ruling in 2006. So we were here before the Ninth Circuit on the Wharton question. And I've been here since. The adventures of the Ninth Circuit and the Supreme Court have something to do with it. It's been a pleasure. We had won in the Supreme Court. You wouldn't even have to be here. That's true. That's true. I think it is important to consider that he would win under Crawford and the equities here certainly. I'll tell you another case that has not been overruled is the United States against Gonzalez, where although we affirm the conviction of Gonzalez, we said letting in a police officer's testimony as to what one victim said impermissibly reinforced the testimony against him. Right. Official testimony in that case. That's pretty important. I agree, Your Honor. Yeah. Unless the Court has any further questions, we'd ask that the Court affirm the district court's ruling. Thank you. Okay. Thank you. Your Honor, the defense is not correctly stating statements that Miller made that came in through the interview with Detective Anderson. First of all, through Jay's testimony, the second time when she came in the room, Kay was saying, no, stop it. And when she arrived, Mr. Miller said, I really didn't mean anything sexually. Then when he talked to the detective, he related he had been drinking the night before, drank two to three beers at the house. He admitted he touched Kay, but said it was accidental and it was not under her clothes. But he described her as being promiscuous and aggressive and said that his hand might have slipped down to her groin in the process of fighting her off. Those statements, I think, indicate the fact that Mr. Miller's behavior was not exculpatory. Yeah, that may be true. But if you had a lot of impermissible testimony supporting it, the verdict was flawed. But here we have an unusual circumstance is that we have an eyewitness to the child molestation. Jay walked into the room, saw him with her hand under her pants in her private area, took Kay from the room. When she walked back in a second time, he was touching her private parts again. And her sister Kay was saying, no, stop it. It hurts. That evidence from the eyewitness, the evidence from the detective about Mr. Miller's statements would be sufficient to have the jury would not. Under the rec standard, it would not have been a substantial and injurious effect in determining the verdict due to that evidence coming in without even the child hearsay statements. The defense also argues that the child did not need treatment, but she had said that it hurts. And the doctor found that there was some irritation and there were scratches. And the nurse did the interview before the doctor examined the child. And the interview was the doctor relied on the nurse's information in doing his examination. The Court of Appeals decision, which the defense says this court should rely on, never addressed the reliability or trustworthiness of the statements to the police officer. However, the Court of Appeals did review the reliability and trustworthiness of the admission of the statements under the medical exception or medical diagnosis exception and found the statements to be reliable. In terms of harmless error, the ADEPA standard should also apply that the state court's decision was not contrary to or unreasonable application. Although the court's language didn't specifically cite to the language of Chapman, they did refer to a case where the constitutional requirement was met. And basically they were saying there was sufficient untainted evidence to find that there was a harmless error in this particular case in terms of the statements to the police officer. Let me ask you this, was there any expert testimony or other along these lines that explained the child's apparently total lack of memory of this event? Well, again, I apologize, Your Honor, I do not know the exact, how long the time was. Seven months. It was seven months? Yeah, seven months was what Ms. Endo said, seven months. But at the time the statements were made, the statements were made to the police officer within an hour and were made to the nurse and physician within two or three hours at the most. So they were very immediate to what happened. Neither, the sister never told her anything about what to say. Do we have the record of examination of her when the judge ruled that she didn't have to testify? I'm sorry, Your Honor, I... Well, I assume there was a hearing in which the state court ruled she did not have to testify. Do we have that record? Her competency hearing, whatever you want to call it. Do we know anything about why he ruled she didn't have to testify? Yes, in his oral ruling he specifically said that she did not remember the facts and therefore she is not... We don't have the hearing in which that ruling is based. Yes, we do, Your Honor. Are we in the record? Yes, that's part of the admission of the child hearsay statements. It was a child hearsay competency hearing. And so those statements... I don't believe I submitted those. It's very curious that she suddenly can't remember anything. But they're not in the excerpts of record. No, I don't believe that I entered the examination of Kay by the court. Can we ask you to provide it to us? Absolutely, Your Honor. I will provide that to the court. And to opposing counsel. And to opposing counsel, of course, Your Honor. All right. And you can get it to us when? Two days? Okay, Your Honor. Okay. The State requests that this Court overturn or vacate the decision of the District Court and deny the habeas corpus petition. Thank you. All right. Thank you very much. And now we'll come to the next case. And that is...
judges: Pregerson, Canby, Noonan